Filed 10/22/13  In re T.G. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | C072860 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | (Super. Ct. No. J-35989) |
| Plaintiff and Respondent, | |
| v. | |
| TYLER G., | |
| Defendant and Appellant. | |

Tyler G., father of the minor, T.G., appeals from orders of the juvenile court denying his petition for modification and terminating his parental rights.  (Welf. & Inst. Code, §§ 366.26, 388.)[1]  Father argues that the court abused its discretion in denying his petition to modify the minor's placement and that there was insufficient evidence to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

support the court's finding the minor was likely to be adopted in a reasonable time. We shall affirm.

## FACTUAL BACKGROUND

In July 2011, the Butte County Department of Employment and Social Services (Department) detained the four-month-old minor from parental custody, in part, at the request of father, who acknowledged he was unable to care for the minor or protect him from the mother. The minor had been diagnosed with hemophilia and needed specialized care and medical treatment. The mother has a history of serious mental health issues with multiple involuntary evaluation holds pursuant to section 5150 and her current mental state rendered her unable to care for the minor. Father had recent convictions for felony stalking and a misdemeanor violation of court orders to prevent domestic violence.

The dispositional report recommended providing services to father and bypassing services for the mother, who had failed to reunify with the minor's half sibling. While the minor needed special care and medical treatment, he was happy, playful and on track developmentally. The minor's health and education passport stated that he had been diagnosed with borderline moderate to severe hemophilia and would be reassessed for needing infusions of his medications as he became more mobile. The necessary infusion medications were sent to the foster mother and would be administered in the local hospital. In August 2011, the minor was doing well with no active bleeding. Father was visiting and participating in some services and was in compliance with treatment for his mental health disorder. The court adopted the recommended dispositional findings and orders. The juvenile court ordered that the care and custody of the minor was under the supervision of the Department, which had discretion to place the minor in foster care.

The March 2012 status review report recommended termination of father's services. Father had not attended counseling, failed to discuss his progress in services with the social worker and had not completed the necessary release forms to allow the

2

social worker to contact the therapist to discuss his progress. The minor continued to receive local pediatric care and specialized care from University of California at Davis Hemophilia Treatment Center (UC Davis) with prescribed medications as needed for bleeding. He continued to meet developmental milestones and had no mental or emotional issues. As the minor became more mobile, he required greater supervision since he was unable to tell when he injured himself while playing. His current foster parent diligently attended to his needs and the UC Davis staff reported that the foster mother's care of the minor's special medical needs was beyond the level they often saw in many biological parents. Since the dispositional hearing, the minor had a CT scan in October 2011 for a fall on his head which was negative and was seen twice in November 2011 at the hospital for bleeding from biting his tongue. His followup at UC Davis indicated he was doing well. UC Davis provided a letter explaining the minor's condition, how he could be affected by bleeding, how he was treated by replacing the missing clotting factor and that parents could be educated to provide the treatment at home until the minor could learn to self-infuse. The letter further discussed the outcomes for the minor if his bleeding was not promptly treated and that head injuries were the most serious for him. The letter concluded that the minor needed to remain in a home which was safe and stable with a caretaker who was very involved in his care.

Father filed a written statement in March 2012 maintaining that he wanted a different social worker because the current social worker was harassing him and had made false reports about his participation in services and other matters. In a second statement in May 2012, father again complained about the social worker's misstatements and claimed that the social worker hated him. In a third statement, also in May 2012, father complained about both the foster mother, for not taking proper precautions to protect the minor, and the social worker, for continued false allegations and failing to keep a close eye on the foster mother.

At the six-month review hearing in June 2012, the social worker testified that father had expressed concerns about the number of times the minor had been to the hospital. The social worker said she had explained to father that the minor went to the hospital because that was where his medication was administered and that the minor was not being harmed, he was behaving only as a normal, active toddler, which resulted in some falls and injuries. The social worker believed father had a better understanding after the explanation. After a break in the hearing, the father no longer contested the recommended orders including the ongoing placement of the minor in the current foster home and submitted the matter. The court terminated father's services and set a section 366.26 hearing.

In August 2012, father filed a statement charging that the social worker had lied and ruined his family. In September 2012, father filed a second statement which again expressed his serious concerns about the foster parent due to the minor's injuries.

The Department's report for the section 366.26 hearing recommended termination of parental rights with adoption as the minor's permanent plan. The report stated the minor received ongoing specialized care from UC Davis for his hemophilia and was prescribed medications for infusions to treat bleeding. The minor had been in the same foster home for over a year and was comfortable there. The report said the caretaker was interested in adoption, but the State Department of Social Services (DSS) believed it might be in the minor's best interests to transition him to a new home. The foster mother did have other children in the home and there was some question whether she could keep the minor safe. The report noted that father was opposed to the current placement because he believed the minor was not well supervised, however, the social worker had reviewed incident reports, observed the minor in placement and found no evidence of neglect. Since the last report, the minor was infused at the local hospital in March 2012 following a fall which resulted in a head injury. He was also seen at the local hospital in

4

April and May 2012 and infused. The minor was seen again in June three times, with a infusion the last time. The minor was seen at the local hospital in August after a fall where he hit his head and was infused to treat bleeding.

The DSS assessment determined the minor was adoptable. The DSS assessment stated the minor was in good general health and noted his hemophilia required a caretaker with skilled knowledge who could give him prompt attention. The assessment acknowledged that even with careful supervision, injuries were extremely common in children from the ages of nine months to six years. The assessment concluded the minor was receiving timely and quality medical care while in his current placement. The minor continued to meet developmental milestones and was a happy, stable toddler. He had a healthy attachment to his caregiver but had some issues when overstimulated by new people or a lot of noise. The assessment stated that father agreed with adoption but had complaints about the current caregiver's supervision of the minor and wanted a different placement. The assessment indicated the current caretaker was very committed to the minor and wanted to adopt him. The caretaker had four other children in the home ranging in age from four to 14 years old. The caretaker showed good parenting practices and was capable of meeting the minor's needs. The caretaker was extremely knowledgeable about the minor's condition and had gone to great lengths to assure he got the best care. The minor's doctors attributed the minor's exceptional rate of healing from injuries to the healthy diet and lifestyle provided by the caretaker. The assessment stated the minor had a significant relationship with his foster family and would benefit from adoption. Based on the available information, removal from the home would be detrimental. However, given father's objections DSS wanted to assure the minor's and the current foster family's safety before proceeding and would transfer the minor if necessary. Preliminary evaluation showed that the current caretaker was suitable and committed and was referred for completion of an adoption homestudy.

5

At the date set for the section 366.26 hearing, the juvenile court continued the case for a contested hearing. Father continued to object to the minor's placement and the court ordered him not to contact the foster mother.

Just prior to the contested hearing, father filed a petition for modification seeking to remove the minor from his current placement. In support of the petition, father stated his belief that the minor was not properly cared for in the current home and that both the Department and DSS refused to move him. Father further believed that there were too many children in the foster home and that that circumstance contributed to the minor's injuries. Father did not believe the foster mother could care for the minor in the long term and that the minor would be better served by a two-parent home with fewer children. The paternal grandparents provided a declaration in support of the petition which expressed much of the same feelings and beliefs as father had stated in the petition. The court set the modification petition for a hearing.

The combined hearing on the petition for modification and selection of a permanent plan commenced in November 2012. Through counsel, father offered to prove that sometime in the previous year he had found that other children were placed in the minor's foster home. Since then the minor had several injuries which caused father concern, including a bump on the head, a swollen eye and bruises on the neck. Father was given different stories on how the minor got the injuries. Father met with the state adoptions workers regarding his concerns. Father did not believe the current foster parent could give the minor the level of care and supervision he required and believed the current placement led to extra hospital visits beyond that of a normal child his age. Father admitted he could not care for the minor and wanted the minor placed with a two-parent family where he could be more closely supervised. The juvenile court had father sworn and testify that the offer of proof would have been his testimony and was the truth.

6

Father's counsel argued there was a change of circumstances in that the foster mother had additional children in the home and that the minor had received significant injuries in the home.  Further, father believed it was in the minor's best interests to be removed from the home and asked for an order that the minor be removed.  Father did not contest termination of his parental rights.

Minor's counsel opposed granting the petition for modification as not in the minor's best interests.

The juvenile court found insufficient evidence of a change in circumstances and further that the requested relief was not in the minor's best interests, noting that the social worker reviewed the incident reports and found no evidence of neglect.  The court denied father's petition for a placement change.  The court found clear and convincing evidence the minor was likely to be adopted and terminated parental rights.

## DISCUSSION

### I.  Petition for Modification

Father argues the juvenile court abused its discretion in denying his petition for modification of the minor's placement.  We conclude father lacks standing to assert this issue.[2]

The California Supreme Court recently addressed the question of a parent's standing to challenge placement when appealing from denial of a placement request and an order terminating parental rights, which occurred at the same hearing.  The court concluded that "[a] parent's appeal from a judgment terminating parental rights confers

---

[2]  In the interest of judicial economy and mindful of the effects of delay in juvenile dependency cases, we resolve this issue without ordering supplemental briefing.  A party claiming to be aggrieved by this procedure may petition for rehearing under Government Code section 68081.

standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.* (2011) 52 Cal.4th 231, 238 [the father did not contest termination in the juvenile court or raise an exception to termination which might depend on placement].)

Here, as in *K.C.*, father did not contest termination of his parental rights in the juvenile court. Even on appeal he challenges only the sufficiency of the evidence supporting adoptability. Reversal of the juvenile court's order denying his petition to modify placement in no way advances that substantial evidence argument, particularly when father made it clear he did not oppose adoption by a different caretaker. The petition for modification focused on the caretaker; the question of adoptability necessarily focuses on the minor. Father is simply not aggrieved by the juvenile court's decision denying his petition for modification of the minor's placement. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948.)

## II.  Substantial Evidence of Adoptability

Father argues substantial evidence does not support the juvenile court's finding that the minor was likely to be adopted in a reasonable time.[3] Father further contends that the minor was only specifically adoptable due to his special needs and the court's finding of adoptability was premature.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of

---

[3] Father's motion to construe the notice of appeal as from both the section 388 ruling and the order terminating parental rights was granted August 8, 2013.

8

fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Generally, issues not raised in the juvenile court are forfeited on appeal, however, a challenge to the sufficiency of the evidence to support the court's finding of adoptability is an obvious exception to the rule. (*In re Brian P.* (2002) 99 Cal.App.4th 616, 623.)

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) The existence or suitability of the prospective adoptive family, if any, is not relevant to this issue. (*Ibid.*; *In re Scott M.* (1993) 13 Cal.App.4th 839, 844.) The fact that a prospective adoptive family is willing to adopt the minor is evidence that the minor is likely to be adopted by that family or some other family in a reasonable time. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154.)

The reports contain ample evidence that the minor's characteristics are such that he is likely to be adopted in a reasonable time. He is young, in general good health with a diagnosis of hemophilia, he is meeting developmental milestones and is described as a

9

happy, bright, active toddler. He is able to form secure and stable attachments. He has no behavioral or emotional problems with the exception of being overstimulated in some situations. As to the hemophilia, his treating specialist at UC Davis has made it clear that the condition is manageable by an informed and trained parent. It was expected that more frequent infusions would be needed as the minor became mobile. Further, the specialist expected that parental care would transition to self-care at some point and the minor would be able to do his own infusions. Thus, while the minor's medical diagnosis was of an admittedly serious condition, it was nonetheless treatable and required only education and training on the part of the caretaker coupled with careful management of his activities in order to minimize injuries. The current caretaker, who was considered by the medical professionals to be providing exceptional care to the minor, was willing to adopt him.

Since the minor's characteristics alone support a finding that he is likely to be adopted by the current caretaker or some other person in a reasonable time, we need not address the question of specific adoptability or any caretaker issues raised by father.[4]

---

[4] DSS found the current caretaker was very committed to the minor, had good parenting practices and was capable of meeting the minor's needs. She was extremely knowledgeable and went to great lengths to ensure he received the best care. The minor had a significant relationship with her and DSS assessed that it would be detrimental to remove the minor from her care. The *sole* reason DSS continued to assess the appropriateness of the family was to ensure the minor's safety in the face of father's charges of neglect. These ongoing allegations were investigated by the social worker and found to be baseless. The DSS referred the current caretaker for an adoption homestudy. DSS also only considered moving the minor from his current home to an out-of-county placement to ensure the safety *of the minor and his current foster family*. Father has a history of mental illness and of criminal convictions that show he is inclined to act in ways that may be threatening to others. He has refused to accept that investigation showed his concerns of foster parent neglect were not founded. The juvenile court was required to order him not to contact the foster parent. Whether he is driven by an overwhelming need to protect his child or from his mental health issues is unknown. Nonetheless, father's fears do not translate into sound reasons for disqualifying a

**DISPOSITION**

The orders of the juvenile court are affirmed.


                                                          BUTZ                    , J.



We concur:



          ROBIE              , Acting P. J.



          HOCH              , J.

---

caretaker who has demonstrably provided exceptional care for the minor from adopting the minor.  There is no basis for considering the minor's current foster parent inadequate in any way.